# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

|  |  |
|---|---|
| WSOU INVESTMENTS, LLC, d/b/a<br>BRAZOS LICENSING AND<br>DEVELOPMENT,<br><br>       Plaintiff,<br><br>       v.<br><br>HEWLETT PACKARD ENTERPRISE<br>COMPANY,<br><br>       Defendant. | Civil Action No. 6:20-cv-00729-ADA<br>Civil Action No. 6:20-cv-00730-ADA<br>Civil Action No. 6:20-cv-00783-ADA |

## DEFENDANT'S SURREPLY *MARKMAN* BRIEF

## TABLE OF CONTENTS

I.    WSOU's Overarching, and Repeated, Errors of Law .............................................1

   A.   It is Legal Error to Ignore the Specification .................................................1

   B.   As Directed by *Phillips*, "Examples" and "Embodiments" Can and Should Inform the
        Construction of the Claims, and Limit Their Scope ....................................3

II.   THE '729 PATENT CLAIM TERMS ...............................................................5

   A.   "a sniffer" (claims 1, 13) ......................................................................5

   B.   "link status messages" (claims 1, 13) / "link state messages" (claims 7, 19)................7

   C.   "inner nodal area" (claims 1, 13) and "outer nodal area[s]" (claims 1, 13) ...................8

   D.   "configuring the sniffer as a partition designated inner nodal-area node of the [first /
        second / remaining] outer nodal area" (claims 1, 13)................................10

III.  THE '774 PATENT CLAIM TERMS ...............................................................11

   A.   "assigning the MC-LAG to a multi-chassis link aggregate group virtual local area
        network (MC-LAG VLAN)" (claim 12)................................................11

IV.   THE '629 PATENT CLAIM TERMS ...............................................................12

   A.   "seed WLAN controller" (claim 1)...........................................................12

   B.   "a processing module operable to . . ." (claim 1).........................................13

   C.   "receive information for other WLAN controllers in the mobility domain" / "receiving
        information for other WLAN controllers in the mobility domain" (claims 1, 8)........15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*3M Innovative Props. Co. v. Avery Dennison Corp.*,
    350 F.3d 1365 (Fed. Cir. 2003) ................................................................ 6

*Alloc, Inc. v. Int'l Trade Comm'n*,
    342 F.3d 1361 (Fed. Cir. 2003) ................................................................ 4

*Bell Atlantic Network Sers, Inc. v. Covad Commu'n Group, Inc.*,
    262 F.3d 1258 (Fed. Cir. 2001) ................................................................ 2

*Hitachi Consumer Elecs. Co. Ltd., v. Top Victory Elecs. (Taiwan) Co., Ltd.*,
    No. 2:10-cv-260-JRG, 2012 WL 5494087 (E.D. Tex. Nov. 13, 2012) ................................ 4

*Hologic, Inc. v. SenoRx, Inc.*,
    639 F.3d 1329 (Fed. Cir. 2011) ................................................................ 4

*Intell. Ventures I LLC v. Motorola Mobility LLC*,
    870 F.3d 1320 (Fed. Cir. 2017) .............................................................. 11

*Lochner Techs., LLC v. Vizio, Inc.*,
    567 F. App'x 931 (Fed. Cir. 2014) .......................................................... 11

*Medicines Co. v. Mylan, Inc.*,
    853 F.3d 1296 (Fed. Cir. 2017) ............................................................3, 4

*Microsoft Corp. v. Multi-Tech Sys., Inc.*,
    357 F.3d 1340 (Fed. Cir. 2004) ................................................................ 6

*Nystrom v. TREX Co., Inc.*,
    424 F.3d 1136 (Fed. Cir. 2005) ................................................................ 4

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) ....................................................... 1, 2, 3, 5

*Retractable Techs., Inc. v. Becton, Dickinson & Co.*,
    653 F.3d 1296 (Fed. Cir. 2011) ............................................................4, 5

*SciMed Life Sys, Inc. v. Advanced Cardiovascular Sys, Inc.*,
    242 F.3d 1337 (Fed. Cir. 2001) ................................................................ 1

*Seachange Intern., Inc. v. C-COR, Inc.*,
    413 F.3d 1361 (Fed. Cir. 2005) ................................................................ 6

*Springs Window Fashions LP v. Novo Indus., L.P.*,
   323 F.3d 989 (Fed. Cir. 2003) ........................................................................... 6

*Texas Digital Systems, Inc. v. Telegenix, Inc.*,
   308 F.3d 1193 (Fed. Cir. 2002) ....................................................................... 2, 3

*Trustees of Columbia University v. Symantec*,
   811 F.3d 1359 (Fed. Cir. 2016) ........................................................................... 2

*UltimatePointer, LLC v. Nintendo Co.*,
   816 F.3d 816 (Fed. Cir. 2016) ............................................................................. 2

*Vitronics Corp. v. Conceptronics, Inc.*,
   90 F.3d 1576 (Fed. Cir. 1996) ......................................................................... 2, 3

**TABLE OF EXHIBITS**

**NO.**     **DESCRIPTION**

**INCLUDED IN HPE RESPONSIVE *MARKMAN* BRIEF**

1      U.S. Patent No. 7,646,729

2      USPTO Response Amendment, dated October 17, 2007

3      Applicant's Amendment and Remarks, dated April 2, 2008

4      Applicant's Amendment and Remarks, dated August 1, 2008

5      HPE Proposed Claim Constructions, dated February 16, 2021

6      Applicant's Amendment and Remarks, dated April 28, 2009

7      U.S. Patent No. 8,462,774

8      U.S. Patent No. 9,398,629

Defendant Hewlett Packard Enterprise Company ("HPE") submits this Surreply *Markman* Brief further supporting its proper constructions for the disputed terms of the '729, '774 and '629 Patents, and addressing Plaintiff WSOU Investments, LLC's ("WSOU") legally erroneous attempt to avoid construing those disputed terms with reference to the Patents' specifications. Without support or analysis, WSOU essentially asserts that almost all the constructions should be "plain and ordinary meaning," without reference to the specification, and without even setting forth a hint of what those meanings might be. WSOU's position is unfounded and contrary to the proper rubric for claim construction declared by *Phillips* and its progeny. *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005). Thus, HPE's proposed constructions should be adopted.

## I.      WSOU's Overarching, and Repeated, Errors of Law

Before addressing the specific patents and terms at issue, two fundamental and interrelated errors that permeate WSOU's reply brief need to be addressed.

### A.      It is Legal Error to Ignore the Specification

Throughout its brief, WSOU argues that lexicography and disclaimer "are the only two exceptions to the rule that a claim term should be accorded its plain and ordinary meaning." WSOU Reply Br. (Dkt. No. 40, "Reply") at 5. Citing to *Phillips*, WSOU even goes so far as to assert HPE has committed a "cardinal sin" by arguing otherwise. *Id.* at 1. WSOU's argument, however, ignores the Federal Circuit's repeated holdings that the specification is always relevant in claim construction.

For instance, in *SciMed*, the Federal Circuit rejected an argument much like WSOU's:

> [T]he written description can provide guidance as to the meaning of the claims, thereby dictating the manner in which the claims are to be construed, even if the guidance is not provided in explicit definitional format.

*SciMed Life Sys, Inc. v. Advanced Cardiovascular Sys, Inc.*, 242 F.3d 1337, 1344–45 (Fed. Cir.

2001).  Building on that theme, the Federal Circuit held in *Bell Atlantic*: "In other words, the specification may define claim terms 'by implication' such that the meaning may be 'found in or ascertained by a reading of the patent documents.'"  *Bell Atlantic Network Sers, Inc. v. Covad Commu'n Group, Inc.*, 262 F.3d 1258, 1268 (Fed. Cir. 2001).  And in *UltimatePointer*, the Federal Circuit explained:

> UltimatePointer's argument that a court may only deviate from the ordinary meaning when there is an explicit definition or disclaimer does not apply because the ordinary meaning of "handheld device," when read in the specific context of the specification of the '729 patent, is limited to a direct-pointing device.

*UltimatePointer, LLC v. Nintendo Co.*, 816 F.3d 816, 824 (Fed. Cir. 2016).  The Federal Circuit also explicitly stated in *Trustees of Columbia University v. Symantec*: "***we reject [the patentee's] argument*** that the presumption of plain and ordinary meaning 'can be ***overcome in only two circumstances***: [when] the patentee has *expressly* defined a term or has *expressly* disavowed the full scope of the claim in the specification and the prosecution history.'"  *Trustees of Columbia University v. Symantec*, 811 F.3d 1359, 1364 (Fed. Cir. 2016) (non-bolded italics in original).[1]

WSOU is simply wrong that disputed terms can be construed in a vacuum while turning a blind eye to the specification.  Per *Phillips*, "the specification 'is ***always*** highly relevant to the claim construction analysis.  Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'"  *Phillips*, 415 F.3d at 1315 (Fed. Cir. 2005) (*en banc*) (quoting *Vitronics Corp. v. Conceptronics, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)).  Indeed, *Phillips* was reheard *en banc* specifically to address the *Texas Digital* approach to claim construction, an approach the *en banc* court concluded "improperly restricts the role of the specification in claim construction." *Id.* at 1320 (discussing *Texas Digital Systems, Inc. v. Telegenix, Inc.*, 308 F.3d 1193 (Fed. Cir. 2002)).  That approach, which the *en banc* court rejected, limited "the role of the specification in

---

[1] Emphases in quotations throughout the brief are added, unless otherwise indicated.

claim construction to serving as a check on the dictionary meaning of a claim term if the

specification require[d] the court to conclude that fewer than all the dictionary definitions apply,

or if the specification contain[ed] a sufficiently specific alternative definition or disavowal." *Id.*

(citations omitted).  After surveying the case law, the Federal Circuit explained:

> In the end, there will still remain some cases in which it will be hard to determine
> whether a person of skill in the art would understand the embodiments to define the
> outer limits of the claim term or merely to be exemplary in nature.  While that task
> may present difficulties in some cases, we nonetheless believe that attempting to
> resolve that problem in the context of the particular patent is likely to capture the
> scope of the actual invention more accurately than either strictly limiting the scope
> of the claims to the embodiments disclosed in the specification or divorcing the
> claim language from the specification.

*Id.* at 1323–24.

**B.    As Directed by *Phillips*, "Examples" and "Embodiments" Can and Should Inform the Construction of the Claims, and Limit Their Scope**

Another, related theme throughout WSOU's brief is the familiar refrain of many

patentees attempting to stretch their claims beyond the bounds of the disclosed invention—that

nothing from an exemplary embodiment discussed in the specification can or should limit the

scope of the claims.  But, as the language from *Phillips* above shows, that is not always true.

Rather, it depends on a careful review of the specification of the patent at issue.  Many other

cases echo and amplify *Phillips*' point on this issue.

For instance, in *Medicines Co.*, the Federal Circuit determined the meaning of "efficient

mixing" in a patent that included a "detailed description [that] provide[d] a laundry list of mixing

techniques that individually (or in combination) may (or may not) constitute efficient mixing."

*Medicines Co. v. Mylan, Inc.*, 853 F.3d 1296, 1307–09 (Fed. Cir. 2017).  Rather than hold that

anything the specification identified as possibly constituting "efficient mixing" was within the

scope of the term, the Federal Circuit looked to the lone actual example of "efficient mixing" and

limited the term to that example, even though that example was explicitly identified as "non-

limiting." *Id.* at 1309.  The court did so because that example was:

> not merely the only disclosed embodiment of efficient mixing—it [wa]s the only description of efficient mixing in the patents in suit that casts light on what efficient mixing is and that enables one of ordinary skill in the art to achieve the objects of the claimed invention. … *[N]o other part* of the patents' written description *sufficiently teaches the affirmative steps* that constitute efficient mixing.  In this circumstance, we think it entirely appropriate to limit the term "efficiently mixing" to the sole portion of the specification that adequately discloses "efficient mixing" to the public.

*Id*.  The court thus chose the "non-limiting" example's specific meaning over the "detailed description's open-ended and vague teachings," as "necessary to 'tether the claims to what the specification[ ] indicate[s] the inventor actually invented.'" *Id.* (quoting *Retractable Techs., Inc. v. Becton, Dickinson & Co.*, 653 F.3d 1296, 1305 (Fed. Cir. 2011)).

Additionally, various Federal Circuit and other cases stand for the related proposition that claims may not enlarge what is patented beyond what the inventor described as her invention, and when the specification "consistently" and "exclusively" describes an element in a certain manner in various embodiments, that is "clearly" what the inventor invented, and informs (and limits) the proper construction of such elements.  *Hitachi Consumer Elecs. Co. Ltd., v. Top Victory Elecs. (Taiwan) Co., Ltd.*, No. 2:10-cv-260-JRG, 2012 WL 5494087, at *16 (E.D. Tex. Nov. 13, 2012) ("The 'consistent[ ] and exclusive[ ]' disclosure of 'control signals' as controlling a recording or playback process 'is clearly what the inventors of the ... patent conceived of' and should inform the proper construction of the disputed term.") (quoting *Hologic, Inc. v. SenoRx, Inc.*, 639 F.3d 1329, 1338 (Fed. Cir. 2011)); *see also Nystrom v. TREX Co., Inc.*, 424 F.3d 1136, 1144–45 (Fed. Cir. 2005) (construing "board" to mean "wood cut from a log" in light of specification's consistent use of term, because patentee "is not entitled to a claim construction divorced from the context of the written description and prosecution history"); *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361 (Fed. Cir. 2003) (holding that, where examples or disclosures

provided by specification are narrower than claim language might imply (such as by frequently and consistently disclosing certain limitation in specification), it is permissible to limit claims).

In sum, "[i]t is axiomatic that the claim construction process entails more than viewing the claim language in isolation." *Retractable Techs.*, 653 F.3d at 1305. And as the cases above, *Phillips* included, make clear, the litigation-oriented patentee cannot escape having the scope of his invention limited to what is actually described in the specification by labelling everything (or most everything) depicted an "embodiment" or an "example." If those are the only descriptions of an aspect of the purported invention, they should be used to give meaning to, and limit as applicable, that aspect as it appears in the claims.

## II.     THE '729 PATENT CLAIM TERMS

### A.     "a sniffer" (claims 1, 13)

Based on explicit statements the applicant made during prosecution, both sides agree "a sniffer" is "computer software or hardware that can intercept and log traffic flowing through a network." There are two disputes: 1) whether other explicit statements the applicant made during prosecution further limit the scope of the term; and 2) whether the specification makes clear that the claimed sniffer is centrally located. The answer to both is yes.

As set forth in HPE's responsive brief, the applicant repeatedly characterized the claimed "sniffer" during prosecution in an effort to avoid prior art, stating both what it is and what it is not—a "sniffer" does its intercepting and logging "without affecting the traffic or network characteristics," "is not a network node," "is not known to or detectable by other network elements," "can be removed without directly affecting the network topology," and "does not manage any aspect of the network." Those limitations all track, near verbatim, statements by the applicant during prosecution, made to obtain the patent. WSOU's only retort is to assert without any explanation that the statements were "broader than necessary to distinguish the prior art,"

suggesting that means WSOU cannot be bound by them.  Reply at 2.  First, that is not the law.
*Any and all* statements made by an applicant describing or distinguishing its invention during
prosecution may be used to limit claim scope, even if the examiner did not rely expressly on the
statements to allow the claims, or even if the examiner disagreed that the remarks adequately
distinguished over the reference.  *Seachange Intern., Inc. v. C-COR, Inc.*, 413 F.3d 1361, 1374
(Fed. Cir. 2005) ("The fact that the Examiner did not indicate reliance on the point-to-point
distinction is of no consequence.  An applicant's argument made during prosecution may lead to
a disavowal of claim scope even if the Examiner did not rely on the argument."); *Microsoft
Corp. v. Multi-Tech Sys., Inc.*, 357 F.3d 1340, 1350 (Fed. Cir. 2004) ("We have stated on
numerous occasions that a patentee's statements during prosecution, whether relied on by the
examiner or not, are relevant to claim interpretation."); *Springs Window Fashions LP v. Novo
Indus., L.P.*, 323 F.3d 989, 993-95 (Fed. Cir. 2003) (rejecting patentee's argument no surrender
should apply from remarks distinguishing prior art reference because examiner appeared to
disagree that remarks distinguished art).  The case crop-quoted by WSOU, *3M Innovation*, is not
to the contrary—there, unlike here, the patentee had expressly defined a term in the specification
and the prosecution statements were being measured against that.  *See 3M Innovative Props. Co.
v. Avery Dennison Corp.*, 350 F.3d 1365 (Fed. Cir. 2003); Reply at 2 n.5.

Second, WSOU offers absolutely nothing to support its (faulty) premise that the
statements were actually broader than necessary to distinguish the prior art.  It presents no expert
opinion.  It presents no comparisons between the then-pending claims, the specification, and that
prior art.  It does not even submit the prior art to this Court.  WSOU's support for the premise is
thus nothing more than bald attorney argument unsupported by any evidence.  WSOU's
arguments should be rejected, and it should be bound by the multiple explicit statements the

applicant made to distinguish the art at issue during prosecution and thus obtain the '729 Patent. The Court can see for itself that the statements were indeed made during prosecution as part of the applicant's effort to distinguish the claims from prior art, and those statements track the additional language HPE proposes in its construction. It makes absolutely no difference whether those statements were broader, narrower, or exactly what was needed in order to overcome that art. They were made, and that alone binds the applicant and its successor-in-interest WSOU.

That leaves the requirement that the "sniffer" be "connected to a central location of the network." WSOU's reply merely asserts that this requirement comes from an embodiment, and it is allegedly *per se* improper to import limitations from embodiments. But, as explained in Section I above, that is not the law. Nor is it true, as WSOU asserted in its opening brief, that the sniffer is centrally located in only "one exemplary embodiment" in the specification. WSOU Opening Claim Construction Br. (Dkt. No. 37, "Opening") at 3. As HPE explained at length in its response brief, HPE Resp. Br. (Dkt. No. 38, "Response"), at 5–6, and WSOU does not refute on reply, the sniffer is centrally located in every embodiment. And, as WSOU also does not refute on reply, the specification describes "the invention" and "the present invention" as including a centrally-located sniffer. Response at 5–6. Reviewing the specification as a whole, as one must, it is clear that the sniffer of the asserted claims must be centrally located.

B.     **"link status messages" (claims 1, 13) / "link state messages" (claims 7, 19)**

HPE respectfully suggests that the confusing "blue light" / "green light" textual highlighting exercise in WSOU's Reply brief proves HPE's point—these terms are hopelessly indefinite. The specification never says they are interchangeable, but, as WSOU's highlighting exercise demonstrates, it uses them differently throughout the specification without explaining what, exactly, the differences might be. Against that backdrop, WSOU cannot overcome the presumption that different terms have different meanings, and cannot point to anything

7

explaining the difference(s) between the terms, or what *each* of them mean.

   **C.     "inner nodal area" (claims 1, 13) and "outer nodal area[s]" (claims 1, 13)**

   Recognizing the strength of HPE's constructions for these terms (and the strength of the support for them), WSOU takes a divide and conquer approach.  Rather than address what each of these terms—"inner nodal area" and "outer nodal area[s]"—each mean as a whole, WSOU instead focuses only on "nodal area" and offers, as a construction for just that portion of each term, a phrase that appears nowhere in the specification ("routing subdomain").  That cannot be correct, particularly where the specification time and again refers to the inner and outer nodal areas as "rings" of nodes:

> The network 100 comprises an ***inner ring area*** 102 ***having*** a plurality of inner ring (L2) ***nodes*** 106.  One or more ***outer ring areas*** 104 are connected to the ***inner ring area*** 102 via the inner ring nodes 106.  Additionally, each of the ***outer ring areas*** 104 ***comprises*** one or more individual (L1) ***nodes*** ….

Response Ex. 1, '729 Patent at 3:12–18; *see also* Response at 10 (citing specification passages).

   Moreover, WSOU no doubt takes this divide and conquer approach because, when each of the two full terms is considered as a whole in the context of the specification's exclusive and consistent description of the areas as "rings," the support for the "central" portion of HPE's construction for "inner nodal area" becomes obvious.  Of course, an inner ring of nodes (a/k/a "inner nodal area") within outer rings of nodes (a/k/a "outer nodal areas") is located centrally compared to those outer rings.  That is simple geometry, and fully consistent with the specification's repeated description of the inner nodal area operating "from a central location." Response Ex. 1, at 2:16–23; *see also* Response at 11–12 (quoting four additional specification passages regarding "central" location).

   With regard to the element management system ("EMS") portion of HPE's construction for "inner nodal area," WSOU does not and cannot dispute the specification states an EMS is

required.  Per the specification: "[p]roper operation of network 100 *requires* that each of the
nodes 106 and 108 have appropriate connectivity to the *EMS*," which "is *connected* to the
network 100 *via one of the inner ring nodes* 106."  Response Ex. 1, at 3:20–24.  It is difficult to
envision a clearer statement.  WSOU's only retort is that "the claims" do not describe an EMS
"as a necessary component of the claimed system."  Reply at 9.  But that is a non-sequitur.  The
claims require an "inner nodal area," and the specification describes an EMS (to use WSOU's
words) "as a necessary component of the claimed system," specifically as part of the "inner
nodal area" of the purported invention.

     As for "outer nodal area" and the dispute between the parties regarding whether the
portion of HPE's construction setting forth that an outer nodal area "shares only one node with
said inner nodal area, and does not share any nodes with any other outer ring," WSOU has little
of substance to say in its Reply brief.  Reply at 9–10.  It admits that the only description of "outer
nodal area" in the specification is consistent with HPE's construction, and can only weakly
muster that those descriptions are "embodiments."  Again, as discussed in Section I above, it is
perfectly appropriate to look to "embodiments" to give meaning to claim terms.  Moreover,
WSOU does not even attempt to dispute HPE's explanation that the whole point of the purported
invention was to address the fact that "outer nodal areas" are structured in the manner set forth in
HPE's proposed construction.  Response at 13–16.  Instead, WSOU's Reply continues to point to
the same sentence fragment from the prosecution history that it relied on in its opening brief to
suggest this term should be given a broader meaning.  Reply at 10.  But WSOU does not even
address, much less attempt to dispute, the detailed explanation HPE provided in its responsive
brief, Response at 15–16, as to why that sentence fragment cannot carry the weight WSOU
attempts to bestow on it.  HPE's construction should be adopted for the reasons previously

stated, that remain unrebutted by WSOU.

> **D.** **"configuring the sniffer as a partition designated inner nodal-area node of the [first / second / remaining] outer nodal area" (claims 1, 13)**

In its responsive brief, HPE explained in detail how the specification of the '729 Patent consistently and exclusively supports HPE's proposed construction. Other than repeating its incorrect arguments that (i) only through lexicography or disavowal/disclaimer can terms be narrowed from their plain and ordinary meaning and (ii) the Court should ignore "embodiments," Reply at 9–10, WSOU has no real response. Rather, in response to HPE explaining, with detailed and specific quotations from the specification, that the key to the invention is the use of the Repairs of Partition Areas feature of ISO/IEC 10589:2001 to configure the sniffer, WSOU exclaims that "the '729 patent never even uses the word 'key.'" Reply at 10. That addresses the semantics of the argument, but not its substance. The issue, of course, is not whether the word "key" appears in the specification, it is what the specification discloses for "configuring" the sniffer as claimed. The specification discloses one and only one manner of configuration: "The functionality of the sniffer 112 as an inner ring node 106 is accomplished by configuring the sniffer as a partition designated inner ring node in accordance with the repair of partition feature of ISO/IEC 10589:2001." Response Ex. 1, at 4:48–51.

WSOU points to nothing to the contrary. It identifies no other methods or manners of configuring the sniffer. Instead, all it can offer is a sentence of rearranged crop-quotes that simply does not exist in the actual specification. Specifically, WSOU patches together the following portions of the specification in reverse order to suggest that the specification "identifies ISO-IEC 10589:2001 as just '*[a]n example*'" of such a manner of configuration: 3:63–65; 2:56–59; and 2:55–56. Reply at 11. But those portions say nothing about the claimed sniffer, much less how it is configured as claimed.

As explained in detail in HPE's responsive brief, the specification of the '729 Patent is clear and unequivocal that the sniffer is configured as claimed by using the Repairs of Partition Areas feature of ISO/IEC 10589:2001.  To hold otherwise via claim construction, as WSOU suggests the Court should via adoption of a plain and ordinary meaning construction, would render the claims invalid as lacking written description support, a disfavored result to be avoided. *Intell. Ventures I LLC v. Motorola Mobility LLC*, 870 F.3d 1320, 1325–26 (Fed. Cir. 2017) ("The proper result is not that claim 41 fails for lack of written description but that it should be construed 'in view of the specification' to be limited." (citation omitted)); *Lochner Techs., LLC v. Vizio, Inc.*, 567 F. App'x 931, 939–40 (Fed. Cir. 2014) (reversing district court for construing term such that it lacked written description, rather than limiting scope of term based on descriptions in specification).

## III.     THE '774 PATENT CLAIM TERMS

### A.     "assigning the MC-LAG to a multi-chassis link aggregate group virtual local area network (MC-LAG VLAN)" (claim 12)

WSOU's Reply brief only serves to strengthen HPE's position.  HPE's responsive brief looked to the only two examples (FIGs 11 and 12) in the specification of the '774 Patent shedding light on what it means to "assign" an MC-LAG to an MC-LAG VLAN.  WSOU's Reply does not dispute what those examples show "assign" means in the context of the patent. Instead, WSOU contends one example (FIG. 12) is not applicable.  As to the other, admittedly on-point, example (FIG. 11), WSOU's only retort is that it must be ignored because it is an "example."  That is simply not the law, as discussed above in Section I.  As WSOU now concedes, FIG. 11 from the specification is the only portion of the specification shedding light on what it means to "assign" an MC-LAG to an MC-LAG VLAN in the context of the '774 Patent.[2]

---

[2] HPE does not agree with WSOU's position on FIG. 12, but that is irrelevant, given WSOU's

And WSOU does not contest that FIG. 11 shows that "assigning" has the meaning set forth in HPE's proposed construction—each logical port of the MC-LAG corresponding to a virtual IP interface on the local and remote aggregation switches is allocated to the same VLAN. As such, that construction should be adopted by the Court.

## IV.    THE '629 PATENT CLAIM TERMS

### A.    "seed WLAN controller" (claim 1)

WSOU makes two arguments in its Reply: (1) that the specification offers no "'clear and unmistakable' disclaimer of claim scope" supporting HPE's proposed construction," and (2) that it is improper to "import a limitation from a preferred embodiment into the claims." Reply at 12. But as explained above in Section I and the cases cited therein, both of these positions are legally erroneous and have been repeatedly rejected by the Federal Circuit.

As HPE explained in its responsive brief, the specification contains only one description of the registration process for newly deploying a WLAN controller 105d into a mobility domain. Response at 25. In accordance with that description, "[t]he newly deployed WLAN controller 105d selects one of the seed WLAN controllers 105a and 105b," which responds with "information for *the* other WLAN controllers 105 registered in the same mobility domain 135." Response Ex. 8, '629 Patent at 7:21–23, 7:42–49. There are no other examples of a different way for the newly deployed WLAN controller 105d to receive information about the other WLAN controllers 105 in the mobility domain. If WLAN controller 105d did not receive information for all of the other WLAN controllers in the mobility domain 135, then it would not be able to fulfill the specification's requirement that "[t]he WLAN controllers 105 in mobility domain 135 need to dynamically discover other WLAN controllers 105 in the same mobility

---

concession on FIG. 11.

domain."  Response Ex. 8, 5:66–6:2.  Contrary to WSOU's assertion that this construction improperly "import[s] a limitation from a preferred embodiment into the claims," Reply at 12, it simply reflects the plain and ordinary meaning of the claim language consistent with the ***only*** disclosed embodiment.

> **B.**    **"a processing module operable to . . ." (claim 1)**

WSOU misrepresents the law regarding 35 U.S.C. § 112(f) in a misguided attempt to save this deficient claim.  Reply at n.25.  WSOU stated in its opening brief that the "presumption" that this claim is not governed by 35 U.S.C. § 112(f) is "especially strong." Opening at 18.  As HPE correctly indicated in its responsive brief, the Federal Circuit in 2015 overruled prior precedent and held that "we should abandon characterizing as 'strong' the presumption that a limitation lacking the word 'means' is not subject to § 112, para. 6." *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1348–49 (Fed. Cir. 2015); *see* Response at 27. HPE further showed that the presumption should not apply here, because the claim merely replaced the word "means" with the well-known nonce word of "module."  *Id.*  WSOU's Reply makes no attempt to respond to that argument.  Thus, the presumption that this claim is not governed by 35 U.S.C. § 112(f) has been overcome.

Abandoning its position that the phrase "processing module" denotes sufficient structure to render the claim not subject to 35 U.S.C. § 112(f) (*see* Opening at 17–19), WSOU argues for the first time in its Reply that the allegedly "detailed algorithm" recited in the claim as the function of the processing module "provides sufficiently definite structure such that the presumption cannot be rebutted that this term is not means-plus-function."  Reply at 13.  WSOU offers no explanation as to why it did not make this argument in its opening brief; the Court should dismiss this argument as waived.  *See Gillaspy v. Dallas Indep. Sch. Dist.*, 278 F. App'x 307, 315 (5th Cir. 2008) ("It is the practice of this court and the district courts to refuse to

consider arguments raised for the first time in reply briefs."); *Dugger v. Stephen F. Austin State Univ.*, 232 F. Supp. 3d 938, 957 (E.D. Tex. 2017) (Bryson, J.) (collecting cases demonstrating that "courts disregard new evidence or argument offered for the first time in the reply brief").

Regardless, WSOU's new argument relies almost exclusively on an incorrect application of a case cited in HPE's responsive brief—*M2M Sols., LLC v. Sierra Wireless Am., Inc.*, No. 1:14-cv-1102, 2019 WL 6328119 (D. Del. Nov. 26, 2019)—to Claim 1 of the '629 Patent. *M2M Solutions* is one of several cases in which claims reciting a "processing module" were held to be subject to 35 U.S.C. § 112(f). Response at 28. That case recognized that, to avoid construction under § 112(f), claims must provide "some explanation of how the [claim term] performs the claimed function." *M2M Sols.*, 2019 WL 6328119, at *4 (quoting *Blackboard, Inc. v. Desire2Learn, Inc.*, 514 F.3d 1371, 1384 (Fed. Cir. 2009) (alteration in original)). A subset of the claims were construed outside § 112(f) because they "recite[d] the same sufficient 'three-step' algorithmic structure as the claims in the '010 patent, namely that the processing module authenticates 'one or more wireless transmissions ... *by determining if at least one transmission contains a coded number*.'" *M2M Sols.*, 2019 WL 6328119, at *4. In other words, claims 24–27 in *M2M Solutions* were outside § 112(f) only because they specified a particular way the processing module carried out the function of authenticating wireless transmissions. *Id.*

Contrary to WSOU's assertions in its Reply, Claim 1 of the '629 Patent is just like the other claims held to be means-plus-function and indefinite in *M2M Solutions*. As WSOU acknowledges, Claim 1 of the '629 Patent requires "three specific steps": (1) "determine an address of at least one seed WLAN controller in the mobility domain"; (2) "register with the at least one seed WLAN controller in the mobility domain"; and (3) "receive information for other WLAN controllers in the mobility domain from the at least one seed WLAN." Reply at 14. But

WSOU wrongly concludes that these three steps "'provide algorithmic structure' describing how the claimed processing module must operate." *Id.* Merely stating the functions executed by the processing module is ***not*** enough to take the claim outside § 112(f). *Digital Retail Apps, Inc. v. H-E-B, LP*, Claim Construction Order, 2020 WL 376664, at *5–7 & n.4 (W.D. Tex. Aug. 19, 2020) (finding claim indefinite and noting that the argument that the three claimed functions constitute the "algorithm" is "completely circular"). Further, WSOU does not (and could not) argue that Claim 1 provides an explanation for how steps (1) and (3) are performed. The claim therefore does not recite structure that could possibly take it outside the reach of 35 U.S.C. § 112(f). Since the specification discloses no corresponding structure for the claimed functions, the claim is indefinite. Response at 29.

### C. "receive information for other WLAN controllers in the mobility domain" / "receiving information for other WLAN controllers in the mobility domain" (claims 1, 8)

WSOU again argues, wrongly, that HPE's proposed construction improperly "reads in a limitation from an embodiment into the claims." Reply at 14. As stated in Section **Error! Reference source not found.** above, reflexively dismissing an "embodiment" from the claim construction process is legally erroneous and has been repeatedly rejected by the Federal Circuit. *See, e.g.*, *Medicines Co.*, 853 F.3d at 1307–09; *Retractable Techs.*, 653 F.3d at 1305. HPE's proposed construction properly interprets these claim limitations in light of the specification and should be adopted.

WSOU is also wrong when it argues the claim could be practiced without receiving the IP addresses of other WLAN controllers in the domain. Reply at 15. WSOU cites nothing to contradict the disclosures HPE cited requiring "at least the IP address." Response at 29–30. Even the passage quoted by WSOU includes "IP addresses" in the contents of the WLAN controllers' mobility lists. Reply at 15 (citing '629 Patent at 3:66–4:3).

Date: April 23, 2021                    Respectfully submitted,

                                        By: */s/ Michael R. Franzinger*
                                        Michael D. Hatcher
                                        Texas State Bar No. 24027067
                                        Callie C. Butcher
                                        Texas State Bar No. 24092203
                                        SIDLEY AUSTIN LLP
                                        2021 McKinney Avenue, Suite 2000
                                        Dallas, TX 75201
                                        Telephone: (214) 981-3300
                                        Facsimile: (214) 981-3400
                                        mhatcher@sidley.com
                                        cbutcher@sidley.com

                                        Michael R. Franzinger
                                        DC Bar No. 500080
                                        SIDLEY AUSTIN LLP
                                        1501 K Street, NW
                                        Washington, DC 20005
                                        Telephone: (202) 736-8000
                                        Facsimile: (202) 736-8711
                                        mfranzinger@sidley.com

                                        Barry K. Shelton
                                        Texas State Bar No. 24055029
                                        SHELTON COBURN LLP
                                        311 RR 620, Suite 205
                                        Austin, TX 78734-4775
                                        Telephone: (512) 263-2165
                                        Facsimile: (512) 263-2166
                                        bshelton@sheltoncoburn.com

                                        **COUNSEL FOR DEFENDANT**
                                        **HEWLETT PACKARD ENTERPRISE COMPANY**

## CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of April 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

| Counsel for WSOU, LLC | VIA CM/ECF |
|---|---|
| Alessandra C. Messing<br>Timothy J. Rousseau<br>Yarelyn Mena<br>BROWN RUDNICK LLP<br>7 Times Square<br>New York, New York 10036<br>telephone: (212) 209-4800<br>facsimile: (212) 209-4801 | amessing@brownrudnick.com;<br>trousseau@brownrudnick.com;<br>ymena@brownrudnick.com |
| Edward J. Naughton<br>Rebecca MacDowell Lecaroz<br>BROWN RUDNICK LLP<br>One Financial Center<br>Boston, Massachusetts 02111<br>telephone: (617) 856-8200<br>facsimile: (617) 856-8201 | enaughton@brownrudnick.com;<br>rlecaroz@brownrudnick.com |
| David M. Stein<br>Sarah G. Hartman<br>BROWN RUDNICK LLP<br>2211 Michelson Drive, 7th Floor<br>Irvine, California 92612<br>telephone: (949) 752-7100<br>facsimile: (949) 252-1514 | dstein@brownrudnick.com;<br>shartman@brownrudnick.com |
| Raymond W. Mort, III<br>THE MORT LAW FIRM, PLLC<br>100 Congress Avenue, Suite 2000<br>Austin, Texas 78701<br>tel/fax: (512) 677-6825 | raymort@austinlaw.com |

*/s/ Michael R. Franzinger*
Michael R. Franzinger