# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### WACO DIVISION

| | |
|---|---|
| WSOU INVESTMENTS, LLC D/B/A BRAZOS LICENSING AND DEVELOPMENT,<br><br>    Plaintiff,<br><br>  v.<br><br>HEWLETT PACKARD ENTERPRISE COMPANY,<br><br>    Defendant. | Civil Action No. 6:20-cv-00730-ADA<br><br>**JURY TRIAL DEMANDED**<br><br>**Public Redacted Version** |

**BRAZOS'S OPPOSITION TO HPE'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(1) (DKT. 53)**

<u>**TABLE OF CONTENTS**</u>

I. Introduction ................................................................................................1

II. Background ................................................................................................2

III. Legal Standard .........................................................................................5

IV. Brazos Has Standing to Sue HPE For Infringement of the Asserted Patent .......................5

  A. Neither Section 6.9 nor Section 9.12 ███████████████████
    ██████████████████████████ ..................................5

  B. Section 6.9 Did Not ██████████████████ ....................9

  C. Section 9.12 Did Not ████████████████████
    ████████████████ ....................................11

  D. Section 9.12's Prohibition Did Not ██████████████
    ██████████████████ ..........................12

  E. The PPA and Its Amendments Show that the Parties Intended for the Assignment from Wade to Brazos to Be Effective ................................12

V. The Agreements Expressly Permit Brazos to Recover for HPE's Pre-Assignment Infringement ................................................................................................13

  A. The Issue of Past Damages Does Not Implicate Article III Standing ...................14

  B. The PPA Assigned Brazos the Right to Sue for Past Infringement .......................16

VI. Conclusion ................................................................................................20

<u>T<small>ABLE OF</small> A<small>UTHORITIES</small></u>

**Page(s)**

**Cases**

*Allhusen v. Caristo Constr. Corp*,
    103 N.E. 2d 891 (N.Y. 1952) ................................................................................10

*Am. Exp. Bank Ltd. v. Uniroyal, Inc.*,
    562 N.Y.S.2d 613 (N.Y. App. Div. 1990) ...............................................................6

*Arachnid, Inc. v. Merit Indus., Inc.*,
    939 F.2d 1574 (Fed. Cir. 1991) ...........................................................16, 17, 18, 19

*Bd. of Trustees of the Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*,
    583 F.3d 832 (Fed. Cir. 2009), *aff'd*, 563 U.S. 776 (2011) ...................................17

*BSC Assocs., LLC v. Leidos, Inc.*,
    91 F. Supp. 3d 319 (N.D.N.Y. 2015) .....................................................................9

*Eaves Brooks Costume Co. v. Y.B.H. Realty Corp.*,
    556 N.E.2d 1093 (N.Y. 1990) ..............................................................................10

*Flast v. Cohen*,
    392 U.S. 83 (1968) ................................................................................................15

*Intellectual Prop. Dev., Inc. v. TCI Cablevision of Cal., Inc.*,
    248 F.3d 1333 (Fed. Cir. 2001) .............................................................................14

*Jefferson St. Holdings Intell. Prop. LLC v. Tech 21 UK Ltd.*,
    No. 5:18-cv-806, 2019 WL 5795667 (W.D. Tex. June 10, 2019) .........................19

*Krausz Indus. Ltd. v. Romac Indus., Inc.*,
    No. 2:10-cv-1204, 2011 WL 3563419 (W.D. Wash. Aug. 15, 2011) ....................19

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    572 U.S. 118 (2014) ........................................................................................14, 15

*Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*,
    925 F.3d 1225 (Fed. Cir. 2019) ..........................................................5, 14, 15, 18

*Minco, Inc. v. Combustion Eng'g, Inc.*,
    95 F.3d 1109 (Fed. Cir. 1996) ...................................................................5, 16, 19

*Mintz v. Pazer*,
    60 N.Y.S. 3d 74 (N.Y. App. Div. 2017) ...............................................................13

*Moore v. Marsh*,
    74 U.S. 515 (1868) ................................................................................................16

*Morrow v. Microsoft Corp.*,
    499 F.3d 1332 (Fed. Cir. 2007) .............................................................................14

*Oaxaca v. Roscoe*,
    641 F.2d 386 (5th Cir. 1981) ...................................................................................5

*Ogden Dev. Corp. v. Fed. Ins. Co.*,
    508 F.2d 583 (2d Cir. 1974) ..................................................................................10

*Parallax Grp. Int'l, LLC v. Incstores.com, LLC,*
    No. 8:16-cv-00929, 2017 WL 3017059 (C.D. Cal. Jan. 25, 2017) ..........................................15

*Pat. Harbor, LLC v. Twentieth Century Home Fox Home Ent.,*
    No. 6:10-cv-607, 2012 WL 12842300 (E.D. Tex. Aug. 17, 2012) ..........................................20

*Pro Cardiaco Pronto Socorro Cardiologica S.A. v. Trussell,*
    863 F. Supp. 135 (S.D.N.Y. 1994) ...........................................................................................9

*Regents of Univ. of N.M. v. Knight,*
    321 F.3d 1111 (Fed. Cir. 2003) ................................................................................................9

*Sims v. Mack Trucks, Inc.,*
    407 F. Supp. 742 (E.D. Pa. 1976) ...............................................................................18, 19

*Slingshot Printing LLC v. HP Inc.,*
    No. 1:20-cv-00184-ADA, 2020 WL 6120177 (W.D. Tex. July 7, 2020) ...................5, 15, 18

*Speedplay, Inc. v. Bebop, Inc.,*
    211 F.3d 1245 (Fed. Cir. 2000) ..............................................................................................18

*Sutton v. E. River Sav. Bank,*
    55 N.Y. 2d 550 (N.Y. 1982) ...................................................................................................12

*Virnetx, Inc. v. Cisco Sys., Inc.,*
    No. 6:10-cv-417, 2012 WL 12897214 (E.D. Tex. Mar. 22, 2012) ..........................................15

*Wheelabrator Techs. of N. Am., Inc. v. Fin. Sec. Assurance of Okla., Inc.,*
    No. 1:88-cv-7623, 1990 WL 180552 (S.D.N.Y. Nov. 15, 1990) ...........................................10

## Other Authorities

1 Corbin, Contracts, § 1 ...................................................................................................................12

Manual of Patent Examining Procedure ...........................................................................................19

**TABLE OF EXHIBITS**

| Ex. | Description |
|---|---|
| A | Excerpt from Amended Schedule A to the August 2, 2017 Amendment to Patent Purchase Agreement (WSOU-HPE-00008960) [FILED UNDER SEAL] |
| B | November 30, 2017 Second Amendment to Patent Purchase Agreement (WSOU-HPE-00009843) [FILED UNDER SEAL] |
| C | December 22, 2017 Third Amendment to Patent Purchase Agreement (WSOU-HPE-00010096) [FILED UNDER SEAL] |
| D | March 1, 2019 Fourth Amendment to Patent Purchase Agreement (WSOU-HPE-00010332) [FILED UNDER SEAL] |
| E | November 26, 2019 Letter Agreement (WSOU-HPE-00011045) [FILED UNDER SEAL] |
| F | January 1, 2020 Sixth Amendment to Patent Purchase Agreement (WSOU-HPE-00011073) [FILED UNDER SEAL] |
| G | September 8, 2021 Letter Agreement ▮▮▮▮▮▮▮ (WSOU-HPE-00020137) [FILED UNDER SEAL] |
| H | November 1, 2017 Patent Purchase and License Agreement (WSOU-HPE-00011257) [FILED UNDER SEAL] |
| I | February 6, 2018 Patent License and License Option Agreement (WSOU-HPE-00011670) [FILED UNDER SEAL] |
| J | March 22, 2018 License Agreement (WSOU-HPE-00011298) [FILED UNDER SEAL] |
| K | April 10, 2018 License Agreement (WSOU-HPE-00011590, 11608) [FILED UNDER SEAL] |
| L | November 14, 2018 License Agreement (WSOU-HPE-00011618) [FILED UNDER SEAL] |
| M | November 14, 2018 License Agreement (WSOU-HPE-00011635) [FILED UNDER SEAL] |
| N | https://www.brazoslicensing.com/about (last accessed Oct. 19, 2021) |
| O | http://wadeandcompany.com (last accessed Oct. 19, 2021) |

| P | Brazos's First Supplemental Responses and Objections to HPE's First Sets of Interrogatories (Case Specific Interrogatory No. 3) (Oct. 1, 2021) |
|---|---|
| Q | Transcript of November 23, 2020 Telephonic Scheduling Conference |
| R | Declaration of Craig Etchegoyen |

## I.    INTRODUCTION

Brazos has Article III standing to assert its patent infringement claims against HPE because it possesses exclusionary rights in the Asserted Patent, and HPE infringed those rights. Nearly a year ago, Brazos produced the documents confirming its Article III standing and its right to recover for past, present, and future infringement of the Asserted Patent.  HPE nevertheless proceeded with this case for ten months before filing this motion, and did so only once it had to defend to the Court its months-long refusal to produce sales data for the accused products for the entire six-year damages period.

The plain reading of the assignments of the Asserted Patent—the July 22, 2017 Patent Purchase Agreement ("PPA," Mot. Ex. 4) entered into by Wade and Company ("Wade"), the PPA's amendments, and Wade's assignment of the PPA to Brazos (collectively, the "Assignment Documents")—establishes that Brazos has Article III standing.

██████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

█████████████████████

██████████████████████████████

████████████████████████████████████████████

1

████████████████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

███████████████████████████████████████   In all events, Brazos's right to recover past

damage is not properly raised in a Rule 12(b)(1) motion and implicates only prudential or

statutory—not constitutional—standing.   ██████████████████████████████████

█████████████████████████████████████████████████████████

## II.   BACKGROUND

The Assignment Documents plainly establish that Brazos owns all right, title, and interest

in the Asserted Patent and the right to sue HPE for past, present, and future infringement.

Pursuant to the PPA (effective July 22, 2017), as amended by the first Amendment (effective

August 2, 2017) ("APPA," Mot. Ex. 6), ██████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

████████   Because Wade assigned the entirety of its interest in the PPA (which by then had been

amended), Brazos received the right to sue for past, present, and future infringement.   Mot. Ex. 3

at Reel/Frame 044000/0140.   ███████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████

██████

In recognition that Wade had assigned its rights in the PPA to Brazos, and that Brazos had become the owner of the assigned patents, Nokia and Brazos continued to work together in the ensuing years.  Two months after the APPA, Nokia, Wade, and Brazos entered into a Second Amendment to the PPA ████████████████████████████████████████ ██████████████████████████████ A month later, Nokia and Brazos entered into a Third Amendment ██████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████████. A Fourth Amendment followed in early 2019, a Fifth Amendment and a letter agreement in late 2019, and a Sixth Amendment in early 2020.  Ex. D;

██

Mot. Ex. 17; Ex. E; Ex. F.  The Fifth Amendment, which became effective October 1, 2019,



. Finally, Nokia and Brazos executed a Letter Agreement ███████████████████, effective September 8, 2021, ██████████████████

Brazos filed its initial complaint against HPE on August 12, 2020 (Dkt. 1) and a First Amended Complaint on November 6, 2020 (Dkt. 22).  HPE filed a Rule 12(b)(6) motion to dismiss, but it did not attack the Court's subject matter jurisdiction over or argue that Brazos could not recover past damages.  Dkt. 25.  By January 7, 2021, Brazos had produced to HPE the PPA, the APPA and the other amendments to the PPA, and the complete record of assignments for the Asserted Patent.  HPE waited *ten months* to file this Motion, and it did so only after Brazos informed HPE that it was seeking the Court's intervention because of HPE's months-long refusal to produce basic financial and sales information for the accused products for the entire

---

[1] The Letter Agreement ██████████████████████████████████████ ████████████████████████████████████████████ ██ ████████████████████████████████ ████████████████████████████████████ .

six-year damages period.

## III.   LEGAL STANDARD

"A factual attack on the subject matter jurisdiction of the court challenges the facts on which jurisdiction depends[,] and matters outside of the pleadings, such as affidavits and testimony, are considered." *Oaxaca v. Roscoe*, 641 F.2d 386, 391 (5th Cir. 1981).  A plaintiff has Article III standing where it "adequately allege[s] that it possesses exclusionary rights and that [defendant] infringe[s] those rights." *Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225, 1234 (Fed. Cir. 2019).

An assignee has statutory or prudential standing to sue for infringement that occurred before the assignment where "the assignment agreement manifests an intent to transfer this right." *Minco, Inc. v. Combustion Eng'g, Inc.*, 95 F.3d 1109, 1117 (Fed. Cir. 1996).  "[T]his inquiry depends on the substance of what was granted rather than formalities or magic words." *Slingshot Printing LLC v. HP Inc.*, No. 1:20-cv-00184-ADA, 2020 WL 6120177, at *2 (W.D. Tex. July 7, 2020) (quoting *Lone Star*, 925 F.3d at 1229).  In assessing whether the right to sue for past infringement was assigned, courts look to "the entirety of the agreements" that established the assignment.  *Minco*, 95 F.3d at 1117-18.

## IV.   BRAZOS HAS STANDING TO SUE HPE FOR INFRINGEMENT OF THE ASSERTED PATENT

### A.   Neither Section 6.9 nor Section 9.12



██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████

            ██████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████        This fact can be no surprise to HPE, as it requested and received from Brazos all of these voluntary licenses during the course of discovery.  *See* Ex. P (Brazos's Supplemental Responses to Case-Specific Interrogatory Nos. 3).  These voluntary licenses include a license entered on November 1, 2017, less than three months after Brazos acquired the Asserted Patent (Ex. H), three licenses entered in early 2018 (Exs. I-K), and two licenses entered on November 14, 2018 (Exs. L-M). ██████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████   HPE's reference to Brazos's filing of "nearly 200 [currently]

pending" patent infringement cases (Mot. at 7), the first of which was filed in March 2020, is

thus irrelevant to the analysis.  HPE's reference to Brazos's interrogatory response, which

describes Brazos's *current* business practices (Mot. at 6-7), is likewise irrelevant and misleading.

Brazos's response discusses Brazos's business *at the time it provided the response* in late 2021:

████████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████

████████████████████████

██████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████ Brazos maintains

an office in Waco, Texas, and it has several employees, including at least one—Matt Hogan,

Brazos's Managing Director of Business Development—████████████████████

██████████████████████████████.  Rather, as is described on Brazos's

website, Mr. Hogan, who has a background "in structured products, specifically mortgage-

backed securities," as well as technology development, is employed to "help Brazos productize

their data-driven offering with flexible structuring solutions."  Ex. N.; Ex. R ¶ 8.

██████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████   Thus, neither Section 6.9 nor Section 9.12 (nor any other section) ████████████

████████████████ .

**B.      Section 6.9 Did Not** ███████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████████

████

Moreover, under New York law, which "governs contractual . . . transfers . . . relating to patents," *Regents of Univ. of N.M. v. Knight*, 321 F.3d 1111, 1118 (Fed. Cir. 2003), ████████

████████████████████████████████████████████████████

████████████████ .  Under New York law "[w]ith limited exception, contractual provisions prohibiting assignments are treated as personal covenants," and "[a]n assignment that violates a personal covenant prohibiting assignments gives rise to an action for damages against the assignor, ***but is enforceable***."  *BSC Assocs., LLC v. Leidos, Inc.*, 91 F. Supp. 3d 319, 323-24 (N.D.N.Y. 2015) (quoting *Pro Cardiaco Pronto Socorro Cardiologica S.A. v. Trussell*, 863 F.

Supp. 135, 137 (S.D.N.Y. 1994) and citing *Allhusen v. Caristo Constr. Corp*, 103 N.E. 2d 891,

892 (N.Y. 1952)) (emphasis added).  For an anti-assignment clause to deprive an assignee of its

rights, the clause "must specifically use language to the effect that the assignee receives no rights

from an improper assignment or that such assignment is void."  *Wheelabrator Techs. of N. Am.,*

*Inc. v. Fin. Sec. Assurance of Okla., Inc.*, No. 1:88-cv-7623, 1990 WL 180552, at *3 (S.D.N.Y.

Nov. 15, 1990). ████████████████████████████████████

████████████████████████████████████████████

     Finally, because a violation of Section 6.9 would, at most, give rise to an action for

damages for Nokia but would not result in the allegedly violating assignment being

unenforceable, HPE, which is not a party to the PPA nor an intended third-party beneficiary

thereof,[2] does not have standing to assert such a violation.  Under New York law, only parties or

intended third-party beneficiaries can sue for breach of an agreement.  *Ogden Dev. Corp. v. Fed.*

*Ins. Co.*, 508 F.2d 583, 588 (2d Cir. 1974) ("Before a stranger can avail himself of the

exceptional privilege of suing for a breach of an agreement, to which he is not a party, he must,

at least show that it was intended for his direct benefit."); *Eaves Brooks Costume Co. v. Y.B.H.*

*Realty Corp.*, 556 N.E.2d 1093, 1096 (N.Y. 1990) ("In the ordinary case, a contractual

obligation, standing alone, will impose a duty only in favor of the promisee and intended third-

party beneficiaries.").  Nokia has never raised the issue HPE presents now; HPE may not step

into Nokia's shoes to do so.

---

[2] ████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████

**C.**     **Section 9.12 Did Not** ██████████████████████████████████
██████████████████████████████

██████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████████

███████████

      ████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████

█████████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████

█████████████████████

[3] ████████████████████████████████████
████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████
████████████████████████████████████████

**D.      Section 9.12's Prohibition Did Not** ██████████████████████████
███████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████  It is undisputed that Wade executed the assignment of the amended PPA to

Brazos on August 21, 2017, ██████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████, on August 21,

2017, Wade effectively assigned "the whole of the interest of [Wade] in the Patent Purchase

Agreement" to Brazos.  Mot. Ex. 3 at Reel/Frame 044000/0140.  █████████████████████

██████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████

**E.      The PPA and Its Amendments Show that the Parties Intended for the
          Assignment from Wade to Brazos to Be Effective**

In interpreting contracts, New York courts "search[] for the probable intent of the parties,

lest form swallow substance," with the aim of "a practical interpretation of the expressions of the

parties to the end that there be a 'realization of [their] reasonable expectations.'"  *Sutton v. E.

River Sav. Bank*, 55 N.Y. 2d 550, 555 (N.Y. 1982) (quoting 1 Corbin, Contracts, § 1).

Accordingly, "not merely literal language, but whatever may be reasonably implied therefrom

must be taken into account." *Mintz v. Pazer*, 60 N.Y.S. 3d 74, 77 (N.Y. App. Div. 2017).

████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

████████████████████████████████

Nokia and Brazos's conduct in entering into several amendments to the PPA, ██████

████████████████████████████████████████████████████████████

█████████████████████████████, further confirms that the parties intended for

Brazos to own and manage the patents, and that Wade's assignment to Brazos accomplished

exactly that. *See, e.g.*, Ex. B (Second Amendment) at 1 ("████████████████████████

████████████████████"); Ex. C (Third Amendment) at 1 (████████████████████

█████████████████████); Mot. Ex. 17 (Fifth Amendment) at 1 ("████████████████

██████████████████").

## V.     THE AGREEMENTS EXPRESSLY PERMIT BRAZOS TO RECOVER FOR HPE'S PRE-ASSIGNMENT INFRINGEMENT

The PPA as amended and read in its entirety assigned Brazos all right, title, and interest

in and to the Assigned Patent, ████████████████████████████████████████████

████████████████████████████████ Mot. Ex. 3 at Reel/Frame 044000/0140.  Moreover,

the prudential issue of whether Brazos can recover past damages does not implicate subject matter jurisdiction and is not properly asserted in a Rule 12(b)(1) motion.  To the extent there is any issue as to the PPA's assignment of the right to sue for past damages to Brazos (there is not), the September 2021 ███████████████████████████████████████████.

### A.    The Issue of Past Damages Does Not Implicate Article III Standing

HPE's argument as to past damages (Mot. at 8-10, 12-15) "confuses the requirements of Article III—which establish when a plaintiff may invoke the judicial power—and the requirements of § 281—which establish when a party may obtain relief under the patent laws." *See Lone Star*, 925 F.3d at 1235.  The Federal Circuit in *Lone Star*, following the Supreme Court in *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014), clarified that the "constitutional threshold" in a patent case is a low one that is satisfied when a plaintiff alleges it possesses exclusionary rights.  *Id.* at 1234-35.  A party that holds "all legal rights to the patent as the patentee or assignee of all patent rights" has constitutional standing to sue for infringement in its own name.  *Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1339-40 (Fed. Cir. 2007). "Additionally, if a patentee transfers 'all substantial rights' to the patent, this amounts to an assignment or a transfer of title, which confers constitutional standing on the assignee to sue for infringement in its own name alone."  *Id.* at 1340 (citing *Intellectual Prop. Dev., Inc. v. TCI Cablevision of Cal., Inc.*, 248 F.3d 1333, 1345 (Fed. Cir. 2001)).  Brazos has established it was the assignee of all legal rights in the Asserted Patent at the time it filed these cases, has suffered injury from HPE's infringement of the Asserted Patent, and thus has established constitutional standing.  *See* § IV above.

The issue of the right to recover for past damages is a separate issue that implicates prudential or statutory, but not constitutional, standing.  Indeed, the Federal Circuit has made clear that whether a plaintiff has standing to sue based on statutory or prudential constraints,

which includes the right to recover for past damages, is one of "statutory standing" that does not implicate the Court's subject matter jurisdiction and is properly brought under Rule 12(b)(6), not Rule 12(b)(1).[4]  *See Lone Star*, 925 F.3d at 1235 (citing *Lexmark*, 572 U.S. at 128 n.4); *see also Flast v. Cohen*, 392 U.S. 83, 99 (1968) ("The fundamental aspect of [constitutional] standing is that it focuses on the party seeking to get his complaint before a federal court and not on the issues he wishes to have adjudicated.").

If necessary, a party "may cure prudential standing defects after it files suit."  *Slingshot*, 2020 WL 6120177, at *2 (citing *Virnetx, Inc. v. Cisco Sys., Inc.*, No. 6:10-cv-417, 2012 WL 12897214, at *2 (E.D. Tex. Mar. 22, 2012)); *see also, e.g., Parallax Grp. Int'l, LLC v. Incstores.com, LLC*, No. 8:16-cv-00929, 2017 WL 3017059, at *3 (C.D. Cal. Jan. 25, 2017) (finding that plaintiff was not assigned the right to sue for past damages but noting that "Plaintiff [had] informed the Court that [a subsequent assignment] had expressly assigned . . . the right to sue for past damages, thereby curing the prudential standing defect" and that unless defendant contested that such an assignment occurred, the motion to dismiss would be vacated as moot).

At the November 23, 2020 initial case management conference, this Court suggested that the issue of whether Brazos had the right to recover for past damages was distinct from whether it had Article III standing.  In granting HPE's request for the pre-discovery production of documents "related to standing in this case," this Court explained that "by standing I mean something that would affect my jurisdiction to handle the case at all, *not just with regard to damages but jurisdiction*."  Ex. Q at 6:21-24 (emphasis added).  HPE ignores the Court and misconstrues the controlling case law in *Lone Star* and *Lexmark*.

---

[4] HPE should have raised this prudential issue in its Rule 12(b)(6) motion (Dkt. 25), but it did not, and it is improper for it to assert it now in Rule 12(b)(1) motion.

**B.**     **The PPA Assigned Brazos the Right to Sue for Past Infringement**

Regardless of whether the issue is properly raised in HPE's Motion, ██████████
████████████████████████████.  To determine whether an assignment transfers
the right to sue for past infringement, courts look to "the entirety of the agreements [in
question]," assessing whether the agreements "manifest[] an intent to transfer this right." *Minco*,
95 F.3d at 1117-18. ███████████████████████████████████████
██████████, and Wade properly assigned all of its interest in the PPA, including the right to sue
for past infringement, to Brazos, in compliance with the Supreme Court and Federal Circuit
cases on which HPE relies.  Mot. at 9, 13 (citing *Moore v. Marsh*, 74 U.S. 515, 522 (1868);
*Arachnid, Inc. v. Merit Indus., Inc.*, 939 F.2d 1574, 1579 n.7 (Fed. Cir. 1991) (describing that an
"assignment of a right of action for past infringements . . . must be express").

██████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████

Although not required by any law, for the purposes of providing public notice of this

assignment, the PPA, as amended, included attached Schedules that were to be recorded with the USPTO reflecting the assignment of specific patents under the PPA.  Amended Schedule B1 (the relevant schedule for the Asserted Patent) provides public notice of Alcatel Lucent's assignment of all right, title, and interest in the Asserted Patent to Wade, subject to the terms of the PPA,

███████████████████████████████████████████████████████████████████

████  Mot. Ex. 3 at Reel/Frame 044000/0137-39.  Wade then assigned to Brazos "the whole of the interest of Wade in the [PPA]" as amended, thereby incorporating the terms of the PPA including Wade's right to sue for past infringement, into the assignment.  Mot. Ex. 3 at Reel/Frame 044000/0140.

HPE's contentions that there is an issue with ██████████████████████████████

████████████████ are unavailing.  First, HPE asserts ██████████████████████

████████████████████████████████████████ This is incorrect.

███████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████ consistent with the *Bd. of Trustees of the Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, 583 F.3d 832 (Fed. Cir. 2009), *aff'd*, 563 U.S. 776 (2011), relied on by HPE.  In that case, the Supreme Court recognized that, although contract language stating a party will "'agree to assign' reflects a mere promise to assign rights in the future," █████████████████████████ that a party "will assign and *do[es] hereby assign*" effected a present assignment.  *Id.* at 841-42.

Another case relied on by HPE, *Arachnid*, 939 F.2d 1574, shows that simply because a

separate assignment agreement, like Amended Schedule B1, is executed for recording purposes does not render the assignment in the PPA merely an agreement to assign.  In *Arachnid*, the Federal Circuit discussed approvingly a district court case—*Sims v. Mack Trucks, Inc.*, 407 F. Supp. 742 (E.D. Pa. 1976)—that evaluated an assignment contact with a structure similar to that of the PPA.  In *Sims*, the assignment contract stated a present assignment with the use of "hereby sells" language, but contained "an additional contract provision [that] recited that the seller 'shall execute' a separate assignment of the patent within one month of execution of the contract of sale." *Arachnid*, 939 F.2d at 1581.  This separate assignment was found to be "a mere formality designed to guarantee payment and to facilitate recordation of the assigned patent.'" *Id.* (quoting *Sims*, 407 F. Supp. at 744).  Its existence did not alter the conclusion that the assignment contract itself operated to assign the asserted patent and was not merely an agreement to assign.  *Id.*

Likewise here, that the parties executed Amended Schedule B1 and recorded it with the USPTO does not alter that ███████████████████████████████████

████████████████████████████████████████████████████████

███████. *See also Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245, 1253 (Fed. Cir. 2000) (finding contract language that inventions "shall belong" to Speedplay and that assignor "hereby conveys, transfers, and assigns" was a present-tense assignment, not a promise to assign).

It is thus improper to read the Amended Schedule B1 *in isolation*, as HPE suggests, to determine whether it contains the "magic words'" necessary to transfer the right to recover for past infringement, without considering the rest of the agreement to assess the "the substance of what was granted." *See Slingshot*, 2020 WL 6120177, at *2 (quoting *Lone Star*, 925 F.3d at 1229).

Similarly, HPE's suggestion that the Amended Schedule B1 is operative on its own

because it is purportedly a more specific document (Mot. at 14-15) is also factually incorrect.



*See, e.g.*, *Minco*, 95 F.3d at 1118 (where in a series of agreements only some expressly assigned the right to sue for past infringement, "the entirety of the agreements establish[] that the MAC assignment clearly conveyed the right to sue for past infringement").

Finally, there is no law—and HPE has pointed to none—that requires that the PPA itself be publicly recorded for its assignment of the right to sue for past damages to be effective.  *See Jefferson St. Holdings Intell. Prop. LLC v. Tech 21 UK Ltd.*, No. 5:18-cv-806, 2019 WL 5795667, at *3 (W.D. Tex. June 10, 2019) (rejecting argument that court lacked subject matter jurisdiction because patent assignment was not recorded and noting that the court had "not found, and [defendant] has not identified, any statutory or other requirement that a patent assignment be recorded in order to be valid"); *Krausz Indus. Ltd. v. Romac Indus., Inc.*, No. 2:10-cv-1204, 2011 WL 3563419, at *2 (W.D. Wash. Aug. 15, 2011) ("[N]otarization and recordation are not preconditions for a valid assignment.")); *see also Arachnid*, 939 F.2d at 1581 (quoting *Sims*, 407 F. Supp. at 744).  Indeed, the very section of the Manual of Patent Examining Procedure on which HPE relies (Mot. at 14) states that "recording of the assignment is merely a ministerial act" (Manual of Pat. Examining Proc., § 301, Part V(A) (June 2020)).  Thus, there is no requirement that an assignment be filed with the USPTO to effectuate the transfer, must less

that the language of the document publicly filed must govern over the totality of the agreement transferring the rights in the patent.

In any event, although it is clear that the PPA, as amended and read in its totality, assigns the rights to sue for past damages, . *See, e.g.*, *Pat. Harbor, LLC v. Twentieth Century Home Fox Home Ent.*, No. 6:10-cv-607, 2012 WL 12842300, at *2 (E.D. Tex. Aug. 17, 2012) ("[A] plaintiff with constitutional standing may cure prudential standing defects after it files suit.").

## VI.   CONCLUSION

The express language in the agreements confirms Brazos has both Article III standing and prudential standing to recover damages for HPE's past, present, and future infringement of the Asserted Patent.  Brazos therefore respectfully requests that the Court deny HPE's motion in its entirety.

Respectfully submitted,

Dated: October 21, 2021

/s/ Raymond W. Mort, III

Raymond W. Mort, III

Edward J. Naughton
Texas State Bar No. 791308
Massachusetts Bar No. 600059
raymort@austinlaw.com
enaughton@brownrudnick.com
THE MORT LAW FIRM, PLLC
Rebecca MacDowell Lecaroz
100 Congress Avenue, Suite 2000
Massachusetts Bar No. 666860
Austin, Texas 78701
rlecaroz@brownrudnick.com
tel/fax:    (512) 677-6825
BROWN RUDNICK LLP
One Financial Center
Boston, Massachusetts 02111
telephone:   (617) 856-8200
facsimile:   (617) 856-8201

Timothy J. Rousseau
New York Bar No. 4698742
trousseau@brownrudnick.com
BROWN RUDNICK LLP
7 Times Square
New York, New York 10036
telephone:   (212) 209-4800
facsimile:   (212) 209-4801

David M. Stein
Texas State Bar No. 797494
dstein@brownrudnick.com
Sarah G. Hartman
California State Bar No. 281751
shartman@brownrudnick.com
BROWN RUDNICK LLP
2211 Michelson Drive, 7th Floor
Irvine, California 92612
telephone:   (949) 752-7100
facsimile:    (949) 252-1514

*Counsel for Plaintiff*
*WSOU Investments, LLC d/b/a*
*Brazos Licensing and Development*

**CERTIFICATE OF SERVICE**

I certify that the foregoing document was served upon all counsel of record via the

Court's CM/ECF electronic filing system in accordance with the Federal Rules of Civil

Procedure on October 21, 2021.

*/s/ Raymond W. Mort, III*
Raymond W. Mort, III
